**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Peter Shah,<br><br>                    Plaintiff,<br><br>              v.<br><br>Caesars Interactive Entertainment, et al.,<br><br>                    Defendants. | Civil Action No. 18-14108 (FLW) (ZNQ)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, Magistrate Judge**

This matter comes before the Court upon Caesars Interactive Entertainment ("Caesars Interactive"), Caesars Entertainment Corporation ("Caesars Entertainment"), and 888 Holdings PLC's ("888 Holdings") (collectively as, "Defendants") Motion for Summary Judgment (the "Motion"). (ECF No. 67.) The undersigned is authorized to hear this matter pursuant to 28 U.S.C. § 636(c)(1). (*See* Consent Order, ECF No. 68.) Peter Shah ("Plaintiff") opposed Defendants' Motion, (ECF No. 69), to which Defendants replied, (ECF No. 73). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated herein, Defendants' Motion is granted. Summary judgment will be entered in favor of Defendants as to all claims.

I.       **BACKGROUND**[1]

Defendant Caesars Interactive is a Delaware corporation with its principal place of business in Nevada. (Caesars Interactive and Caesars Entertainment's Answer to Amended Complaint ("Caesars' Answer") ¶ 1, ECF No. 45.) Defendant Caesars Entertainment is a Delaware corporation with its principal place of business in Nevada. (*Id.*) Caesars Interactive is a wholly owned subsidiary of Caesars Entertainment. (Pl.'s Opp'n Introduction, ECF No. 69.) Defendant 888 Holdings is a Gibraltar corporation. (Am. Compl. ("Complaint") ¶ 1, ECF No. 44; 888 Holdings Answer ¶ 1, ECF No. 56.) Plaintiff is a resident of New Jersey. (Complaint ¶ 1.)

Caesars Interactive and Caesars Entertainment (collectively as, "Caesars") "operate[] an online poker platform, www.wsop.com ("wsop.com")." (Defendants' Statement of Material Facts ("DSMF") ¶ 4, ECF No. 67-2.) "888 Holdings operates an online poker platform, us.888poker.com ("888poker.com")." (*Id.* ¶ 5.) 888 Holdings developed and administers the software for wsop.com via a vending agreement with Caesars. (*Id.* ¶ 6.)

At all relevant times, Defendants have been duly licensed and authorized by the New Jersey Division of Gaming Enforcement ("DGE") (Mot. Ex. D, ECF No. 67-1; *see also* DSMF ¶ 8-9) and the Nevada Gaming Commission *(Id.* Ex. E; DSMF ¶ 11). Part of the DGE's process was analyzing the Random Number Generator ("RNG") "using three statistical tests." (DSMF ¶ 10; Mot. Ex. D.)

Plaintiff's educational background consists of taking some math classes, including statistics, but his educational was primarily focused on physics. (DSMF ¶ 14-15.) Plaintiff worked at his father's company auditing books, was a stockbroker and trader, owned a fast food franchise, and currently owns a real-estate investment company. (*Id.* ¶ 17.) Plaintiff played online poker on

---

[1] Notwithstanding the fact that Plaintiff has admitted to all the facts in DSMF by not submitting a responsive statement of material facts as required by Local Civ. R. 56.1(a), the Court has gone through the exercise of identifying and addressing any material facts in dispute.

wsop.com from 2016 to 2019. (Pl.'s Opp'n ¶ 2.) Plaintiff started playing online poker on 888poker.com in November 2019 and continues to play, as recently as August 18, 2020. (*Id.* ¶ 3.) Plaintiff has played over 16,000 hands of online poker. (*Id.* ¶ 4.) Plaintiff is neither a professional poker player nor an expert. Plaintiff did not hire an expert or designate himself as an expert. (Mot. Ex. H. ¶ 8.) In his response to Defendants' Interrogatory Number 8, "Plaintiff answered, 'NO EXPERT WITNESS FROM MY SIDE." (Moving Br. 7-8, ECF No. 67-3; Mot. Ex. H. ¶ 8.)

## II. PLAINTIFF'S CLAIMS

Plaintiff alleges that Defendants "engage[] in fraud and manipulations by making these poker games fast games," . . . "to generate higher rake (commission or cut) by dealing fake cards to players as well as community cards, . . . "[D]efendants also insert fake players in the game," . . . and "operates in unlicensed state(s)." (Am. Compl. ¶ 3; *see also* Pl.'s Opp'n ¶ 5.) For the first time in his opposition to this Motion, Defendant specifically alleged violations of: (1) the New Jersey Consumer Fraud Act; (2) common law fraud; (3) 18 U.S.C. § 1962(c) (the federal RICO statute); (4) civil conspiracy; and, (5) the Unlawful Internet Gaming Act. (*See generally* Pl.'s Opp'n; *see also* Defs.' Reply 16, ECF No. 73.)

## III. LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

3

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## IV. **DISCUSSION**

The Court will address Plaintiff's New Jersey Consumer Fraud Act and common law fraud claims in depth because these claims are the only clear claims the Court can extract from Plaintiff's Amended Complaint. Though the Court need not address allegations not alleged in Plaintiff's Complaint but asserted in his opposition to this Motion, the Court will briefly address them.[2]

---

[2] *See, e.g., Holland v. Macerich,* No. 09-914 RMB/AMD, 2011 U.S. Dist. LEXIS 149657 *9 (D.N.J. Dec. 29, 2011) (The obligation to construe the complaint liberally does not extend to claims based on theories not alluded to in the complaint. Here, Plaintiff's Amended Complaint alludes to claims based on theories of fraud and manipulation not based on violations of the Unlawful Internet Gaming Act, criminal or civil conspiracy.)

### New Jersey Consumer Fraud Act (the "CFA"): *N.J.S.A.* 56:8-2

To successfully state a claim under the CFA, a claimant must "allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84, 97 (D.N.J. 2011). "'The [CFA] creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations.'" *Del. Valley Bindery Inc. v. Ramshaw*, No. 17-0422 BRM/TJB, 2017 U.S. Dist. LEXIS 150921 *15 (D.N.J. Sept. 18, 2017) (citation omitted). "To constitute consumer fraud the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Smajlaj*, 782 F.Supp.2d at 98 (citation omitted.) Though the CFA does not define ascertainable loss, "the New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory[,]" (*Id.*), which translates to "when a consumer receives less than what was promised." *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617 (N.J. Super. Ct. App. Div. 2002). Under this definition of ascertainable loss, a claimant must show: "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Smajlaj*, 782 F.Supp.2d at 99.

    Plaintiff addresses the elements of the CFA as follows,

> a. Unlawful conduct by defendant: By not following live table game rules, defendants are engaged in a unlawful activities
>
> b. An ascertainable loss by plaintiff: Shah has lost ascertainable money and time.
>
> c. A casual relation between the unlawful conduct and the

> ascertainable loss: By unlawfully dealing high value cards more frequently (as explained in Exhibit B), the Nevada Casino Company and Israel Casino Company are generating illegal income (rakes/commissions).

(Pl.'s Opp'n ¶ 11.)

As to the first element, Plaintiff has failed to establish unlawful conduct on the part of the Defendants. To show unlawful conduct, Plaintiff merely asserts that Defendants are not following the same rules as live table games. However, he has provided no facts to support his claim. Specifically, Plaintiff's claims against Defendants for unlawful conduct are that wwsop.com and 888poker.com use players who are not real, manipulate hands, do not offer bad beat jackpots, and the frequency of certain hands being dealt is different than in live table games. (*see* DSMF ¶¶ 30-36; Dep. Tr. Shah 54:6 – 59:11, ECF No. 67-1.) First, in discussing bots, or fake players, Plaintiff testified in his deposition,

> Q: How do you know they're not real people?
>
> A: I cannot hundred percent say that they are not real, but I can statistically or mathematically say that there's something wrong here. I can say that.

(DSMF ¶ 35; Shah Dep. 59:12-16.) Thus, Plaintiff's assertion that Defendants use players that are not real is merely speculation.

Second, Plaintiff has failed to establish that Defendants manipulate hands. Plaintiff's primary evidence in establishing his claim that Defendants manipulate hands include: (1) a discrepancy chart (Pl.'s Opp'n ¶ 25); (2) Declaration (Pl.'s Opp'n Ex. A); and (3) his self-authored report "A Probabilistic Approach to Randomness on WSOP.com" (the "Report") (*Id.* Ex. B.). Plaintiff's discrepancy chart is simply a short-form analysis of the Report. Thus, the admissibility

of the chart hinges on that of the Report. (Pl.'s Opp'n ¶ 25.) Plaintiff's Declaration is offered in support of accepting the Report and its findings as valid, so its admissibility is similarly dependent on that of the Report. (*see generally* Pl.'s Opp'n, Ex. B.) For the reasons below, neither the Report nor the supporting chart and Declaration are admissible, and therefore, Plaintiff's claims have no basis or foundation in fact.

Defendants argue the Report is inadmissible because: (1) it was not produced during discovery (Defs.' Reply 3); (2) because Plaintiff is not an expert and the Report calls for expert analysis and testimony (*Id.* at 6); (3) the report is not relevant because it is flawed (*Id.* at 8); and (4) the Report is opinion testimony from a lay witness (*Id.* at 13). The Court agrees with Defendant that the Report is inadmissible because it was not provided during discovery as required by Fed. R. Civ. P. ("Rule") 26(a)(2). Furthermore, Plaintiff is not an expert, nor has he retained an expert. Plaintiff's Report is drawn from almost 16,000 poker hands he has personally played without any "scientific, technical, or other specialized knowledge." Fed. R. Evidence 702. Because Plaintiff is not an expert and has not retained an expert, he has not met the *Daubert* standard and the Report is inadmissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (requiring "a grounding in methods and procedures of science" and must be more than "subjective believe or unsupported speculation"). The Report is merely the opinion testimony from a lay person based upon speculative assertions and unfounded conclusions.

Third, Plaintiff concedes that bad beat jackpots are offered for the purpose of incentivizing players to visit the casinos in person at low-traffic hours. (Shah Dep. 43:7 – 45:2.) Additionally, Plaintiff can point to no rule or regulation that requires these jackpots to be offered in online poker games. (DSMF ¶¶ 66-67; *see generally* Pl.'s Opp'n.). Accordingly, Plaintiff not only fails to

provide any proof that the absence of bad beat jackpots is unlawful, but rather, it seems completely appropriate considering its admitted purpose.

Finally, as to Plaintiff's claim regarding the frequency of certain hands dealt in online poker versus live table games, Defendants argue there is no regulation regarding the speed at which cards should be dealt. (Moving Br. 13.) Plaintiff fails to point to any regulation to the contrary and asserts only that "[t]his lack of regulation is concerning." (Pl.'s Opp'n ¶ 15.) Accordingly, Plaintiff's claim is admittedly without merit.

Additionally, Defendants have provided approval letters from the New Jersey Department of Gaming Enforcement ("DGE"), authorizing them to offer their software online within the boundaries of New Jersey. Furthermore, the RNGs on wsop.com and 888poker.com are subject to audits by the DGE. (Moving Br. 14-15; The New Jersey Casino Control Act, N.J.S.A. 5:12-76 through 5:12-79.) Plaintiff has failed to point to any findings of the DGE showing violations of their regulations and there is no evidence in the record to support any violation of the DGE.

Plaintiff has failed to provide facts showing any unlawful conduct by the Defendants, and in some instances, has demonstrated that Defendant's conduct was completely proper. Because he cannot satisfy an essential element of the CFA, Plaintiff's fraud claim must fail.

**New Jersey common law fraud**

To state a claim for common law fraud in New Jersey, a claimant must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Ramshaw*, 2017 U.S. Dist. LEXIS at 17. Plaintiff relies on his arguments for Defendants' violation of the CFA to support his common law fraud claim. Thus, for the same reasons, Plaintiff's claim fails to allege anything more than conclusory

statements with no basis in facts established during discovery. Specifically, Plaintiff fails again on the first element, a material misrepresentation. Plaintiff admits he did not read the WSOP Terms of Service. (Pl.'s Opp'n ¶ 18.) Additionally, Plaintiff fails to show any misrepresentations made by Defendants regarding the speed of play, frequency of specific hands being dealt, and bad beat jackpots.

### RICO, civil conspiracy, and Unlawful Internet Gaming Act

Both racketeering under 18 U.S.C §§ 1961-68 ("RICO") and the Unlawful Internet Gaming Act do not provide a private cause of action. Thus, Plaintiff is barred from bringing these claims. Furthermore, Plaintiff has not established Defendants have violated either of these statutes for purposes of establishing the unlawful conduct element of fraud. As for civil conspiracy, Plaintiff has alleged merely conclusions of law with no factual basis. (Pl.'s Opp'n ¶ 12.) Conclusions based on speculation do not give rise to genuine disputes as to material facts. Thus, Plaintiff's claims alleged in his opposition to this Motion remain unsupported.

### V.   CONCLUSION

For the reasons stated above, Defendants' Motion is granted. Summary judgment will be entered in favor of Defendants as to all claims. An appropriate order follows.

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE

9